UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

MICKEY FINCHER,            )
                           )
        Plaintiff,          )   No. 4:13-CV-1783 JAR
                           )
    v.                      )
                           )
CENTURY SURETY COMPANY,    )
                           )
        Defendant.          )

## MEMORANDUM AND ORDER

This matter is before the court on Defendant Century Surety's Motion for Partial Summary Judgment (ECF No. 19). In the Motion, Defendant Century Surety Company asserts that it is entitled to summary judgment on Plaintiff Mickey Fincher's lost profits claim. This matter is fully briefed and ready for disposition.

## BACKGROUND

Plaintiff Mickey Fincher ("Fincher") brought this action against Defendant Century Surety Company ("Defendant") for underinsured motorist benefits based upon a motor vehicle accident that occurred on May 21, 2011. (Defendant Century Surety's Statement of Uncontroverted Material Facts in Support of Its Motion for Partial Summary Judgment ("DSUMF"), ECF No. 20-1, ¶1). On May 21, 2011, Fincher was a passenger in a vehicle being driven by his wife when they were rear-ended by a vehicle being driven by Mr. Dennis Brand. (ECF No. 20 at 1). Fincher settled his claim against Mr. Brand for the policy limits of $100,000 and thereafter sought underinsured motorist proceeds from Defendant under the policy of insurance that applied to the vehicle he was riding in at the time of the collision. (Id.)

Fincher began working as an operator and mechanic at American Can in March 1968. (DSUMF, ¶2). After retiring from American Can in 1996, Fincher began rehabbing houses with his son, Lenny. (DSUMF, ¶3). At some time thereafter, Fincher obtained a license from the State of Missouri, and he began selling used cars under the name MLS Auto Sales, LLC ("MLS"). (DSUMF, ¶4). Fincher did not have any prior experience with cars, but stated that he always loved cars and wanted to try to buy and sell them for a living. (DSUMF, ¶5).

In 2008, Fincher earned $22,602 in taxable income from MLS. (DSUMF, ¶6). In 2009, MLS reported a net loss for the taxable year in the amount of $22,944.00. (DSUMF, ¶7). In 2010, MLS reported a net loss in the amount of $53,844.00. (DSUMF, ¶8). In 2011, Fincher earned $19,599 in taxable income from MLS. (DSUMF, ¶9). In 2012, MLS reported a net loss of $643.00. (DSUMF, ¶10).

Prior to the motor vehicle accident, Fincher worked 9:00 a.m. to 5:00 p.m. five days a week at MLS selling cars. (DSUMF, ¶11). After the accident, Fincher alleges that he began to experience memory problems that caused him embarrassment in front of customers and consequently he stopped his selling cars himself. (DSUMF, ¶12). After he stopped selling cars, Fincher taught his son, Kenny, the business, and Kenny took over day-to-day operations of MLS. (DSUMF, ¶13). Eventually, however, Fincher decided to shut down MLS, and Fincher and his wife are in the process of liquidating MLS and selling their remaining vehicle inventory at auction. (DSUMF, ¶14).

## **SUMMARY JUDGMENT STANDARD**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Torgerson, 643 F.3d at 1042 (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000)).

## DISCUSSION

In addition to medical expenses in excess of $50,000, Fincher claims to have sustained other damages in excess of $600,000. (Petition for Payment of Benefits Pursuant to Under-Insured Motorist Insurance Policy ("Petition"), ECF No. 6, at ¶5). Fincher's discovery responses

indicate that some of those other damages are from lost business income and profits. (ECF No. 20 at 5).

In the Motion for Partial Summary Judgment, Defendant argues that Fincher's tax returns for the years leading up to and following the car accident do not establish a reliable pattern of profits that can substantiate any claim for lost profits. (ECF No. 20 at 5). Defendant asserts that a fact finder cannot make a rational estimate as to Fincher's lost profits based upon the record in this case. (ECF No. 20 at 6). As shown above, between 2008 and 2012, Fincher's business, MLS, made a profit twice and it operated at a loss three times. (ECF No. 20 at 6; DSUMF, ¶¶6-10). While admitting that there can be a credible explanation for uneven earnings, Defendant asserts that, based upon this evidence, there can be no consistent pattern or trajectory which would allow a trier of fact to enter judgment in Fincher's favor for lost business profits, particularly in the absence of any expert testimony on behalf of Fincher. (ECF No. 20 at 6-7; ECF No. 27 at 3).

In response, Fincher maintains that issues of fact exist that preclude entry of summary judgment in favor of Defendant on Fincher's lost profits claim. Fincher notes that MLS was in the business of vehicle sales and real estate sales and investments. (ECF No. 26-1; ECF No. 25 at 2). Fincher's spouse, Sherry Fincher, had primary responsibility with regard to the real estate sales and investments portion of MLS and Fincher had primary responsibility for the auto sales business interests of MLS. (ECF No. 25 at 2). Fincher claims that the revenue and expenses of MLS were allocated appropriately in order to reduce the tax liability for MLS, Fincher, and his spouse. (ECF No. 25 at 2). Fincher cites <u>Joe Garavelli's Rest., Inc. v. Colonial Square Associates, L.P.</u>, 21 S.W.3d 149 (Mo. Ct. App. 2000) as support for this proposition. In that case, the defendant appealed an award for lost profits after a jury trial where the income tax

returns for the period showed a loss for tax purposes.  Id. at 153.  Plaintiff Garavelli's accountant explained the loss "by showing that accelerated depreciation and amortization deductions had been allowed for tax purposes, but were not cash items and were not appropriate on an operating statement."  Id. at 153.  The Missouri Court of Appeals determined that the evidence was sufficient to affirm a lost profits award, particularly because the witness explained the basis for the tax loss and was subject to cross-examination.  Id.  Fincher claims that he will testify at trial that his brain injury caused him to make poor business decisions, such as the purchase of an expensive gazebo and putting in a petting zoo, which increased the expenses of the business but did not increase business traffic to the auto sales lot.  (ECF No. 25 at 2-3).

"For an award of lost profits damages, a party must produce evidence that provides an adequate basis for estimating the lost profits with reasonable certainty." Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 54 (Mo. 2005)(citing Meridian Enters. Corp. v. KCBS, Inc., 910 S.W.2d 329, 331 (Mo. Ct. App. 1995)). "Loss of profits refers to the amount of net profits a plaintiff would have realized if its clients had not been lost as a result of a defendant's actions." Id. "While an estimate of prospective or anticipated profits must rest upon more than mere speculation, '[u]ncertainty as to the amount of profits that would have been made does not prevent a recovery.'" Ameristar Jet Charter, Inc., 155 S.W.3d at 54-55 (citing Gasser v. John Knox Village, 761 S.W.2d 728, 734 (Mo. Ct. App. 1988)). "The claimant must establish the fact of damages with reasonable certainty, but it is not always possible to establish the amount of damages with the same degree of certainty." Ameristar Jet Charter, Inc., 155 S.W.3d at 55.  The Missouri Supreme Court cited Ranch Hand Foods, Inc. v. Polar Pak Foods, Inc., 690 S.W.2d 437, 444–45 (Mo. Ct. App. 1985) as follows:

> In some cases, the evidence weighed in common experience demonstrates that a substantial pecuniary loss has occurred, but at the same time it is apparent that the

> loss is of a character which defies exact proof. In that situation, it is reasonable to require a lesser degree of certainty as to the amount of loss, leaving a greater degree of discretion to the court or jury. This principle is applicable in the case of proof of lost profits.

Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc., 155 S.W.3d 50, 55 (Mo. 2005).

The Court finds that, based upon the totality of the evidence, Fincher has not provided evidence that MLS experienced lost profits to a reasonable degree of certainty such that he should be permitted to present this claim for lost profits to the jury. Based upon the undisputed evidence, Fincher has made a profit on only two occasions in the last five years, and one of those times occurred the year that Fincher was injured. Fincher attempted to explain his reported losses for MLS by stating that he allocated its revenue and expenses to reduce its tax liability. Fincher, however, has failed to provide any documentation or evidence to show exactly how the allocation of revenues and expenses points to MLS' profitability and supports his claim for lost profits. (ECF No. 27 at 4). Fincher's affidavit (ECF No. 26-1) provides only self-serving statements that do not even begin, in any concrete way, to support his claim of loss profits for the car sales side of MLS. Fincher provides only conjecture and conclusory statements to support his claim. Further, at his deposition, Fincher stated that he was not familiar with his tax returns and unable to explain how those calculations were made. (ECF No. 27 at 3; see ECF No. 20-3 (Fincher testified "That's the reason I get a tax lady, you know. They've got ways of doing it, you know. I don't want to say one way or the other.")). Because Fincher has been entirely unable to explain his tax records, the Court will not allow him to make those arguments now (and at trial) to the prejudice of Defendant. Furthermore, Fincher's case is clearly distinguishable from Joe Garavelli's Rest., Inc. v. Colonial Square Associates, L.P., 21 S.W.3d 149 (Mo. Ct. App. 2000) because Garavelli's had a longer and more reliable history of profits, and Garavelli's employed its accountant to testify on its behalf. See Joe Garavelli's Rest., Inc.,

21 S.W.3d at 153.  Fincher has neither a long history of profits, nor does he have anyone (including himself) who can explain his lost profits analysis based upon his tax returns.  With Fincher unable to explain his tax returns and without an expert or professional testimony to interpret those tax returns, the Court is unable to find any competent evidence to support his claim that MLS operated at a loss in order to avoid tax liability.

Likewise, although Fincher attempted to explain at his deposition that he reported a loss because he spent funds developing his inventory and on foolish business decisions (ECF No. 20-3 at 18-20), there is no evidence before the Court that these business decisions were related to his alleged brain injury.  Rather, Fincher, in his own testimony, stated that he built the gazebo and the petting zoo in an effort to bring people into the car lot.  Although these decisions proved to be unprofitable, there is no evidence that these decisions were based upon any faulty logic or that they were the result of any injury.  Fincher has no expert testimony to support his claim that he made these poor business decisions as a result of his brain injury, and Fincher's belief is pure conjecture.

Based upon his tax returns and business practices, the Court believes that Fincher has not provided evidence of profits to a reasonable degree of certainty such that he should be permitted to present his claims for lost profits.  Not only has Fincher not demonstrated the fact that he suffered lost profits, but Fincher has not provided any competent and reliable evidence to support a finding that MLS experienced lost profits as a result of his brain injury.  Fincher has shown that MLS was profitable for only two years (one of which was the year he was injured) and has presented only conjectural evidence that MLS's supposed loss was the result of efforts to reduce tax liability.  Therefore, the Court grants Defendant's Motion for Summary Judgment and will not allow Fincher to present evidence of lost profits to the jury.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Century Surety's Motion for Partial Summary Judgment [19] is **GRANTED**.

Dated this 8th day of August, 2014.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**